UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JENNIFER FREYTES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-38-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | **MEMORANDUM OPINION** |
| CALSON INVESTMENTS, LTD, and | ) | **& ORDER** |
| CLAIMS MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on the Motion for Summary Judgment [R. 92] filed by Defendants Wal-Mart Stores East, LP, and Calson Investments, Ltd. Plaintiff Jennifer Freytes has filed a Response [R. 93] in opposition to the motion. For the reasons set forth below, the Court will grant the motion. The Court will also dismiss Freytes's bad faith claims against Defendant Claims Management, Inc., and deny as moot the pending Motion in Limine to preclude the testimony of Freytes's treating physician [R. 91] and the Joint Motion to Stay proceedings pending the Court's ruling on the Motion for Summary Judgment [R. 95].

**I.**

In her Second Amended Complaint, Freytes claims that on a date prior to June 1, 2007, she purchased a pair of "No Boundaries" brand flip-flop style shoes at a retail store operated by Defendant Wal-Mart on Richmond Road in Lexington, Kentucky. [R. 54 at ¶¶ 20-21.] She claims that Calson manufactured the shoes. [*Id.* at ¶ 20.] Freytes alleges that after wearing the

1

shoes for approximately three (3) days, she developed severe chemical burns on both feet. [*Id.* at ¶ 22.] Accordingly, Freytes alleges that the shoes were defective and unreasonably dangerous at the time of sale. [*Id.* at ¶ 31.] Freytes claims that Wal-Mart and Calson are strictly liable for her injuries; she also seeks to hold them liable for negligence and for breach of the implied warranty of the fitness of the product. [*Id.* at ¶¶ 30-36, 52-60, 64-66.]

Freytes's deposition testimony, attached to her Response to the summary judgment motion, helps to clarify her claims. Freytes testified that she had been purchasing and wearing Wal-Mart flip flops for years before she bought the pair that is the subject of this lawsuit. [R. 93, Attach. 1 at 16.] She stated, however, that she believed that she had only bought the No Boundaries brand once before, a black pair that "did just fine." [*Id.* at 23.] The pair that she alleges caused her injuries were white. [*Id.*] Freytes testified that after she wore the flip flops the first day, her feet were itching a "little bit" at the top around her toes. [*Id.* at 28.] According to Freytes, after wearing them for three days straight, the itching became progressively worse and the area where the sandal straps touched the tops of her feet looked red and irritated. [*See id.* at 28-33.] She stopped wearing the shoes for a few days up to a week, and then decided to try them on again. [*Id.* at 33-34.] Freytes stated that after a short period of time, she took them off and never wore them again because they were itching her feet. [*Id.* at 34-35.]

Freytes testified that the red rash that had begun in the area of the v-shaped straps of the flip flops then began to progress up her foot to her ankle. [*Id.* at 36.] Freytes stated that she attempted to treat the rash with over-the-counter creams, but they only stopped the itching, not the rash itself. [*Id.* at 42-44.] Eventually, she went to a hospital emergency room, where she was diagnosed with contact dermatitis and prescribed a different cream. [*Id.* at 45.] Freytes testified

2

that the rash and itching continued, reaching its worse point in January or February of 2008. [*Id.* at 47.] Freytes then went to see a dermatologist in Bardstown, who diagnosed her with contact dermatitis and a MRSA infection. [*Id.* at 50.] In spite of her treatment with the dermatologist, Freytes testified that her condition stayed the same. [*Id.* at 52.]

Eventually, Freytes's dermatologist referred her to a second dermatologist in Lexington who could do patch testing. [*Id.* at 53.] Freytes testified that every doctor she has seen has diagnosed her with contact dermatitis. [*Id.* at 57.] She stated that the condition reoccurs from time to time, though recently she has been able to control it with over-the-counter hydrocortisone cream. [*See id.* at 56, 61.] She also stated that the rash sometimes appears on her stomach, and, on at least one occasion, it has appeared on her ear and head. [*Id.* at 63.]

## II.

### A.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court

"must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)). The Court has no duty, however, "to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (citation omitted).

**B.**

Defendants Wal-Mart and Calson argue that they should be granted summary judgment because Freytes has failed to identify any expert witness who will opine that the subject flip flops were defective, and she has further failed to produce any expert report establishing that the flip flops caused her injuries. Freytes counters that expert testimony is not necessary in this case. She argues that she has sufficient circumstantial evidence to create a genuine issue of material fact on these issues.

There is no need to consider Freytes's claims of strict liability, negligence, and breach of warranty separately because they all "have one common denominator which is that causation must be established." *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970); *see also Spencer v. Playtex Products, Inc.*, 2007 WL 2343768, at *2 (Ky. App. Aug. 17, 2007). As stated by Kentucky's highest court in *Holbrook*,

> Whether we view the case as one presenting the problem of negligence in the preparation of the product, negligence in failing to adequately warn about the consequences of the use of the product, or improperly warranting the product to be fit for a particular purpose, or whether the problem is viewed as the sale of a product so defective as to be unreasonably dangerous because of an inherent defect or inadequate warning as to use, in every instance recited, the product must be a legal cause of the harm.

*Id.* In other words, it is the plaintiff's burden to establish the presence of a defect, and to show

that this defect was a substantial factor in bringing about her harm. *See id.*; *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 507 (6th Cir. 1998).

The Kentucky Supreme Court has held "that for a proper understanding of that which requires scientific or specialized knowledge and which cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life, expert testimony is needed." *Commonwealth, Dept. of Highways v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967). Further, "expert witnesses are generally necessary, indeed essential, in products liability cases . . . to prove such matters as a product defect and proximate causation . . . ." *Thomas v. Manchester Tank & Equipment Corp.*, 2005 WL 3673118, at *1 (W.D. Ky. May 13, 2005) (quoting William S. Haynes, *Kentucky Jurisprudence: Torts* § 21-18 (1987)); *see also Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. Jan. 12, 2001). In some instances, however, circumstantial evidence may be sufficient on these matters. *See Holbrook*, 458 S.W.2d at 157; *Kentucky Farm Bureau Mut. Ins. Co. v. Hitachi Home Electronics (America), Inc.*, 2009 WL 2760956, at *2 (E.D. Ky. Aug. 26, 2009). "[T]he essence of the test concerning the sufficiency of plaintiff's circumstantial evidence concerning causation is that the proof must be sufficient to tilt the balance from 'possibility' to 'probability.'" *Holbrook*, 458 S.W.2d at 158; *see Gray v. General Motors Corp.*, 133 F. Supp. 2d 530, 534 (E.D. Ky. 2001) (quoting *Beverly Hills Fire Litig.*, 695 F.2d 207, 219 (6th Cir. 1982)). In particular, reliance upon circumstantial evidence is often appropriate where other possible causes have been eliminated. *Kentucky Farm Bureau*, 2009 WL 2760956, at *2; *Gray*, 133 F. Supp. 2d at 534.

Here, Freytes does not have sufficient circumstantial evidence from which a jury could reasonably find that the white No Boundaries flip flops she purchased from a Lexington Wal-

Mart in 2007 had a defect. Freytes has evidence that the Saint Joseph Hospital emergency room treated her for a rash on the tops of her feet in late September of 2007, more than three months after she purchased, wore, and stopped wearing the subject sandals. [*See* R. 93, Attach. 4 at 1-8.] She has stated that this rash began after and as a result of wearing the sandals; that, indeed, the rash initially appeared in the pattern the flip flop straps made on the tops of her feet. Standing alone, however, such evidence does not establish a defect in the flip flops themselves. This is especially true where, as here, chemical testing on the flip flops did not uncover the presence of any compounds "other than the bulk synthetic rubber components itself which might cause the skin reactions." [R. 92, Attach. 2.] Further, Freytes has no evidence eliminating other possible causes of her skin condition, such as an allergic reaction. *See Kentucky Farm Bureau*, 2009 WL 2760956, at *2; *Gray*, 133 F. Supp. 2d at 534.

Even assuming that Freytes could establish a defect in the flip flops, however, her claims must fail because she lacks sufficient evidence to prove that the shoes caused her injuries. As noted previously, Freytes did not seek treatment for her rash until months after she stopped wearing the subject flip flops, and she claims that the rash has appeared on her feet, legs, abdomen, ear, and head. Under these circumstances, expert testimony establishing a connection between the shoes and her injuries is likely necessary. Whether wearing flip flops for a period of four days could cause a rash or other injuries that last for months and that also affect a person's legs, abdomen, ear, and head is not a matter within the general knowledge of ordinary persons. *See Manchester Tank*, 2005 WL 3673118, at *1.

Freytes, however, has no expert witness who establishes a connection between the flip flops and her alleged injuries. In her Federal Rule of Civil Procedure 26(a)(2) disclosures,

6

Freytes listed several doctors, stating that no expert reports were disclosed because all her medical witnesses are treating physicians who were neither retained nor specifically employed to provide expert testimony. [R. 91, Attach. 3 at 2.] Freytes attached to her disclosures a letter written by Dr. Paula Johnson, a primary care internal medicine physician, who diagnosed Freytes with peripheral neuropathy and stated that her symptoms began after suffering a skin reaction to Wal-Mart flip flops. [R. 91, Attach. 3 at 4.] Dr. Johnson further wrote, "I believe that her current symptoms are a direct result of the above mentioned skin reaction and I recommend *evaluation by a neurologist* to confirm or refute this diagnosis and assist me in a treatment plan." [*Id.* (emphasis in original).] But at her deposition, Dr. Johnson noted that she first saw Freytes in April of 2009 to evaluate her asthma and upper abdominal pain from gall stones. [R. 90, Attach. 1 at 4-5.] Only later did Freytes tell her than she suffered a skin reaction from wearing Wal-Mart flip flops, and Dr. Johnson conceded that she could not connect Freytes's neuropathy, or joint and muscle pain, to the sandals with any reasonable medical certainty. [R. 90, Attach. 2 at 3.] Dr. Johnson also stated that neuropathy can be caused by many different other factors. [*Id.* at 3-4] Thus, Dr. Johnson's testimony and the other evidence presented by Freytes on the issue of causation is insufficient to "tilt the balance from 'possibility' to 'probability.'" *Holbrook*, 458 S.W.2d at 158.

In short, it appears that Freytes wants the rash itself to serve both as evidence that the flip flops were defective and that they caused her injuries. This simply asks the jury to speculate and surmise too much. *See Gray*, 133 F. Supp. 2d at 534; *Spencer*, 2007 WL 2343768, at *2. Therefore, the Court will grant summary judgment to Wal-Mart and Calson.

In her Second Amended Complaint, Freytes also sued Claims Management, Inc., Wal-

Mart's insurer. [*See* R. 54 at ¶¶ 67-70.] Specifically, she alleged that Claims Management engaged in unfair claims settlement practices by failing to acknowledge and act with reasonable promptness upon receipt of her claims for injuries against Wal-Mart, by failing to conduct a reasonable investigation into her claims, and by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of her claims. [*Id.*] On July 9, 2009, the Court entered an Order bifurcating Freytes's bad faith claims against Claims Management from her underlying tort claims against Wal-Mart. [R. 38.] Because the Court finds that Freytes cannot sustain her claims against Wal-Mart, her claims against Claims Management necessarily fail as well.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Motion for Summary Judgment [R. 92] filed by Defendants Wal-Mart Stores East, LP, and Calson Investments, Ltd, is **GRANTED**;

2. The pending Motion in Limine [R. 91] and Agreed Joint Motion to Stay [R. 95] are **DENIED as moot**;

3. The Plaintiff's claims against Defendant Claims Management, Inc., are **DISMISSED**;

4. The Plaintiff's Complaint is **DISMISSED with prejudice**, and this matter is **STRICKEN** from the docket;

5. Judgment is entered contemporaneously herewith; and

6. This is a final and appealable Order.

This the 26th day of May, 2011.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge